# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

TINA M.,[1]
     Plaintiff,

Case No. 2:24-cv-4252
Litkovitz, M.J.

vs.

COMMISSIONER OF
SOCIAL SECURITY,
     Defendant.

**ORDER**

Plaintiff Tina M. brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for Supplemental Security Income (SSI). This matter is before the Court on plaintiff's statement of errors (Doc. 8) and the Commissioner's response (Doc. 9). Plaintiff did not file a reply.

## I. Procedural Background

Plaintiff protectively filed her application for SSI on January 5, 2022, alleging disability beginning January 1, 2010, due to hypothyroidism; fibromyalgia; polycystic ovary syndrome; dermographism; cluster headaches; bipolar depressive disorder; agoraphobia; generalized anxiety disorder; social anxiety; GERD; pain in the knees, legs and back; and stomach issues. (Tr. 10 & n.1, 244). The application was denied initially and on reconsideration. Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Francine Serafin. Plaintiff and a vocational expert (VE) appeared telephonically and testified at

---

[1] Pursuant to General Order 22-01, due to significant privacy concerns in social security cases, any opinion, order, judgment or other disposition in social security cases in the Southern District of Ohio shall refer to plaintiffs only by their first names and last initials.

the ALJ hearing on August 2, 2023. (Tr. 51-74). On October 31, 2023, ALJ Serafin issued a decision denying plaintiff's SSI application. (Tr. 7-27). This decision became the final decision of the Commissioner when the Appeals Council denied review on October 7, 2024. (Tr. 1-6).

## II. Analysis

### A. Legal Framework for Disability Determinations

To qualify for SSI, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. § 1382c(a)(3)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy. 42 U.S.C. § 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five–step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment — *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities — the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled. If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.*, 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§

416.920(a)(4)(i)-(v), 416.920 (b)-(g)). The claimant has the burden of proof at the first four

steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 548

(6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to

perform the relevant previous employment, the burden shifts to the Commissioner to show that

the claimant can perform other substantial gainful employment and that such employment exists

in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th

Cir. 1999).

### B. The Administrative Law Judge's Findings

The ALJ applied the sequential evaluation process and made the following findings of

fact and conclusions of law:

> 1. [Plaintiff] has not engaged in substantial gainful activity since January 5, 2022, the application date (20 CFR 416.971 *et seq.*).
>
> 2. [Plaintiff] has the following severe impairments: bipolar depressive disorder, generalized anxiety disorder, panic disorder, post-traumatic stress disorder, iliotibial band syndrome, trochanteric bursitis, patellofemoral stress syndrome, bilateral carpal tunnel syndrome, hypothyroidism, and obesity.
>
> 3. [Plaintiff] does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 416.920(d), 416.925 and 416.926).
>
> 4. After careful consideration of the entire record, the [ALJ] finds that [plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: She can frequently climb ramps and stairs and can occasionally climb ladders, ropes, and scaffolds. She has no limitations on balancing and can frequently stoop, kneel, crouch and crawl. She can frequently perform fingering, handling, and feeling with the bilateral upper extremities. She can perform simple routine work tasks that are not at an assembly line or

production pace and that do not involve any strict production quotas. She can tolerate occasional interaction with coworkers but should have little to no interaction with the public. She can tolerate occasional changes in the work routine or work setting.

5. [Plaintiff] has no past relevant work (20 CFR 416.965).

6. [Plaintiff] was born [in] . . . 1990 and was 32 years old, which is defined as a younger individual age 18-49, on the date the application was filed (20 CFR 416.963).

7. [Plaintiff] has at least a high school education (20 CFR 416.964).

8. Transferability of job skills is not an issue because [plaintiff] does not have past relevant work (20 CFR 416.968).

9. Considering [plaintiff]'s age, education, work experience, and residual functional capacity, there are jobs that exist in significant numbers in the national economy that [plaintiff] can perform (20 CFR 416.969 and 416.969a).[2]

10. [Plaintiff] has not been under a disability, as defined in the Social Security Act, since January 5, 2022, the date the application was filed (20 CFR 416.920(g)).

(Tr. 13-27).

## C. Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 405 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

---

[2] Relying on the VE's testimony, ALJ Serafin found plaintiff would be able to perform the requirements of representative medium, unskilled occupations such as sweeper/cleaner (16,115 jobs in the national economy), janitor (17,121 jobs in the national economy), or car cleaner (17,563 jobs in the national economy); and the requirements of light, unskilled occupations such as collator operator (43,943 jobs in the national economy), merchandise marker (129,318 jobs in the national economy), or housekeeper cleaner (223,000 jobs in the national economy). (Tr. 25-27, 69-70).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 587 U.S. 97 (2019) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746).

**D. Specific Errors**

Plaintiff raises two assignments of error: (1) ALJ Serafin's residual functional capacity (RFC) finding is not supported by substantial evidence because ALJ Serafin erroneously determined that plaintiff was capable of performing medium work, and ALJ Serafin failed to fully consider plaintiff's limitations in concentration, persistence and pace; and (2) ALJ Serafin failed to properly consider plaintiff's fibromyalgia. The Court begins with the latter.

    1.   <u>Fibromyalgia</u>

Plaintiff argues that because a prior ALJ found that her fibromyalgia was a severe medically determinable impairment, "the current ALJ was required to adopt that finding unless presented with new and material evidence showing medical improvement." (Doc. 8 at PAGEID

5

780).  Plaintiff argues that "the record consistently documents diagnoses and objective findings documenting her fibromyalgia."  (*Id.*).  Plaintiff also argues that the fact of her fibromyalgia diagnosis is enough to establish that it is a medically determinable impairment under Social Security Ruling (SSR)[3] 16-3p.  Plaintiff argues that the error in not finding fibromyalgia to be a medically determinable impairment at all (let alone a severe one) was not harmless.  Plaintiff argues that ALJ Serafin treated her fibromyalgia-related symptoms "as non-impairment-based complaints and gave them no independent weight in the [RFC] analysis."  (*Id.* at PAGEID 781-82).

In response, the Commissioner argues that under SSR 12-2p, diagnosis alone will not establish fibromyalgia as a medically determinable impairment.  The Commissioner argues that while "consistency between proceedings and finality with respect to resolved applications" is important under Sixth Circuit authority (Doc. 9 at PAGEID 722 (citing *Earley v. Comm'r of Soc. Sec.*, 893 F.3d 929, 931 (6th Cir. 2018))), it is also true that a prior ALJ's decision does not have *res judicata* effect on a subsequent application for benefits covering a different period.  The Commissioner argues ALJ Serafin did not adopt the prior ALJ's decision because the prior ALJ failed to evaluate plaintiff's fibromyalgia properly under the applicable SSR.  According to the Commissioner, ALJ Serafin fairly concluded based on the record before her that plaintiff had not established the existence of fibromyalgia as a medically determinable impairment.  Finally, the Commissioner argues that ALJ Serafin expressly considered plaintiff's allegedly fibromyalgia-

---

[3] "Social Security Rulings do not have the force and effect of law, but are 'binding on all components of the Social Security Administration' and represent 'precedent final opinions and orders and statements of policy and interpretations' adopted by the Commissioner." *Ferguson v. Comm'r of Soc. Sec.*, 628 F.3d 269, 272 n.1 (6th Cir. 2010) (quoting 20 C.F.R. § 402.35(b)(1)).

related symptoms consistent with SSR 12-2p because they could have been caused by medically

determinable impairments that ALJ Serafin found *were* supported by the record.

   a. *Res judicata*

  In 2018, ALJ Shaughnessy—considering a different SSI application/time period—

determined plaintiff had the medically determinable impairment of fibromyalgia. (Tr. 89). In

*Drummond v. Comm'r of Soc. Sec.*, 126 F.3d 837, 842 (6th Cir. 1997), the Sixth Circuit held that

"[w]hen the Commissioner has made a final decision concerning a claimant's entitlement to

benefits, the Commissioner is bound by this determination absent changed circumstances." A

subsequent Acquiescence Ruling (AR) 98-4(6), 1998 WL 283902 (June 1, 1998) explained:

> When adjudicating a subsequent disability claim with an unadjudicated period
> arising under the same title of the Act as the prior claim, adjudicators must adopt
> such a finding from the final decision by an ALJ or the Appeals Council on the
> prior claim in determining whether the claimant is disabled with respect to the
> unadjudicated period unless there is new and material evidence relating to such a
> finding or there has been a change in the law, regulations or rulings affecting the
> finding or the method for arriving at the finding.

*Id.* at *3.

  The Sixth Circuit has since clarified "some overstatement in *Drummond*. . . ."

*Earley*, 893 F.3d at 933. It explained:

> [I]ssue preclusion, sometimes called collateral estoppel, rarely would apply in this
> setting. That doctrine "foreclos[es] successive litigation of an issue of fact or law
> actually litigated and resolved." [*New Hampshire v. Maine*, 532 U.S. 742, 748-49,
> (2001)]. But human health is rarely static. Sure as we're born, we age. Sometimes
> we become sick and sometimes we become better as time passes. Any earlier
> proceeding that found or rejected the onset of a disability could rarely, if ever, have
> "actually litigated and resolved" whether a person was disabled at some later date.
>
> All of this helps to explain why *Drummond* referred to "principles of *res judicata*"
> – with an accent on the word "principles." 126 F.3d at 841-843. What are those
> principles? Finality, efficiency, and the consistent treatment of like cases. An

> administrative law judge honors those principles by considering what an earlier judge found with respect to a later application and by considering that earlier record. *Id.* at 842, *see Albright v. Comm'r of Soc. Sec.*, 174 F.3d 473, 478 (4th Cir. 1999). This is why it is fair for an administrative law judge to take the view that, absent new and additional evidence, the first administrative law judge's findings are legitimate, albeit not binding, consideration in reviewing a second application.

*Id.* The *Earley* court emphasized that honoring *principles* of *res judicata* does "not prevent the agency from giving a fresh look to a new application containing new evidence or satisfying a new regulatory threshold that covers a new period of alleged disability while being mindful of past rulings and the record in prior proceedings." *Id.* at 931.

           b.      *SSR 12-2p*

Fibromyalgia can be a medically determinable impairment when demonstrated by evidence from a licensed medical or osteopathic doctor; diagnosis alone is insufficient. SSR 12-2p, 2012 WL 3104869, at *2 (July 25, 2012) ("We cannot rely upon the physician's diagnosis alone."). That evidence is assessed using one of two sets of criteria: the 1990 American College of Rheumatology Criteria for the Classification of Fibromyalgia (section II.A. criteria) or the 2010 ACR Preliminary Diagnostic Criteria (section II.B. criteria). *Id.* A claimant must meet all elements of either (or both) sets of criteria to find that fibromyalgia is a medically determinable impairment. *Id.* at *2-3. The following chart summarizes the two sets of criteria.

|   | **II.A.** | **II.B.** |
|---|---|---|
| **1** | History of widespread pain in all quadrants of the body and axial skeletal pain, which has persisted at least three months. Pain may fluctuate in intensity and may not always be present. | History of widespread pain in all quadrants of the body and axial skeletal pain, which has persisted at least three months. Pain may fluctuate in intensity and may not always be present. |

| 2 | At least 11 positive of 18 tender point sites found in all quadrants of the body. | Repeated manifestation of six or more fibromyalgia symptoms, signs,[4] or co-occurring conditions.[5] |
|---|---|---|
| 3 | Evidence showing that other disorders were ruled out (e.g., imaging, laboratory tests). | Evidence showing that other disorders were ruled out (e.g., imaging, laboratory tests). |

*See id.*

> c.   *Analysis*

Against this backdrop, the Court considers ALJ Serafin's treatment of plaintiff's fibromyalgia diagnosis in this case. (*See* Tr. 13-16). ALJ Serafin found element 1 satisfied as to II.A. and II.B. (Tr. 14). ALJ Serafin found element 2 was not satisfied as to II.A. because "[t]he current medical evidence of record does not document any tender point examination findings, positive or otherwise. . . ." (Tr. 15). ALJ Serafin therefore turned to element 2 of II.B. and found sufficient evidence of depression, anxiety disorder, irritable bowel syndrome, gastroesophageal reflux disorder, fatigue, cognitive problems, difficulty staying awake, and numbness or tingling. (*Id.*). ALJ Serafin concluded, however, that plaintiff failed to satisfy element 3 of either set of criteria. Not only did the record fail to demonstrate other disorders had been ruled out, but it also reflected that plaintiff's other medically determinable impairments

---

[4] These include muscle pain, irritable bowel syndrome, fatigue or tiredness, thinking or remembering problems, muscle weakness, headache, pain or cramps in the abdomen, numbness or tingling, dizziness, insomnia, depression, constipation, pain in the upper abdomen, nausea, nervousness, chest pain, blurred vision, fever, diarrhea, dry mouth, itching, wheezing, Raynaud's phenomenon, hives or welts, ringing in the ears, vomiting, heartburn, oral ulcers, loss of taste, change in taste, seizures, dry eyes, shortness of breath, loss of appetite, rash, sun sensitivity, hearing difficulties, easy bruising, hair loss, frequent urination, or bladder spasms. *See id.* at *3 n.9.

[5] These include irritable bowel syndrome, depression, anxiety disorder, chronic fatigue syndrome, irritable bladder syndrome, interstitial cystitis, temporomandibular joint disorder, gastroesophageal reflux disorder, migraine, or restless leg syndrome. *See id.* n.10.

(e.g., carpal tunnel syndrome, hypothyroidism, and several mental health impairments) could have caused plaintiff's symptoms. (Tr. 16).

ALJ Serafin expressly discussed and rejected the prior ALJ's fibromyalgia finding, explaining:

> ALJ Shaughnessy stated that [plaintiff] had been diagnosed with [fibromyalgia (FM)] based on a finding of 16 of 18 positive tender points (See Ex. C2A, 6). However, the decision indicates this information came from a verbal statement provided by [plaintiff]'s previous representative at the hearing (See Ex. C2A, 6).[6] As discussed above, evidence from an [accepted medical source] is required to establish FM as an [medically determinable impairment] (*See supra*). Furthermore, it is a general requirement that objective medical evidence used to support any finding by an ALJ must be documented in the exhibited medical evidence of record. Based on the foregoing, the undersigned finds that the criteria of paragraph 2 of section II.A are not satisfied.

(Tr. 15).

The Court finds ALJ Serafin duly considered the prior ALJ's decision and record regarding plaintiff's fibromyalgia, and ALJ Serafin's decision in this case is based on substantial evidence. Plaintiff did not file a reply memorandum, leaving the Commissioner's arguments in the response to the statement of errors unrefuted. SSR 12-2p establishes that diagnosis alone is not sufficient to deem fibromyalgia a medically determinable impairment; the evidence in the record does not establish element 3 of either the II.A. or II.B. criteria; and *Earley* establishes that ALJ Serafin was not required to give preclusive effect to the prior ALJ's determination that plaintiff had the medically determinable impairment of fibromyalgia where a different period of benefits is at issue. ALJ Serafin explained why she did not find the prior ALJ's decision was entitled to deference, properly applied the SSR 12-2p criteria to the record in this case, and

---

[6] ALJ Shaughnessy stated: "At the [2018] hearing, [plaintiff]'s attorney stated that [plaintiff] has now been diagnosed with fibromyalgia on the basis of having positive findings in 16 out of 18 tender points." (Tr. 89).

concluded that fibromyalgia was not a medically determinable impairment. Most importantly, ALJ Serafin nevertheless considered plaintiff's reportedly fibromyalgia-related symptoms "in the context of and under the rules that apply" to plaintiff's other medically determinable impairments that could cause many of her reported symptoms in accordance with SSR 12-2p. (Tr. 16). Plaintiff's argument that her reportedly fibromyalgia-related symptoms were not "properly evaluated" (Doc. 8 at PAGEID 782) is effectively a restatement of her position that ALJ Serafin erred by not finding fibromyalgia a medically determinable impairment, which is not persuasive for the reasons already discussed. Plaintiff fails to articulate how ALJ Serafin failed to otherwise consider these symptoms in her decision. This assignment of error is **OVERRULED**.

2. <u>RFC</u>

The ALJ is charged with the final responsibility in determining a claimant's RFC. *See* 20 C.F.R. § 416.946(c). A claimant's RFC is an assessment of "the most [a claimant] can still do despite [her] limitations." 20 C.F.R. § 416.945(a)(1). A claimant's RFC assessment must be based on all the relevant medical and other evidence in her case file. 20 C.F.R. § 416.945(a)(3). The governing regulations[7] describe five different categories of evidence: (1) objective medical evidence, (2) medical opinions, (3) other medical evidence, (4) evidence from nonmedical sources, and (5) prior administrative medical findings. 20 C.F.R. § 416.913(a)(1)-(5). With regard to two of these categories—medical opinions and prior administrative findings[8]—an ALJ

---

[7] Plaintiff's application was filed after March 27, 2017. Therefore, it is governed by the revised regulations redefining how evidence is categorized and evaluated when an RFC is assessed. *See* 20 C.F.R. §§ 416.913(a), 416.920c.

[8] A "prior administrative medical finding" is defined as "[a] finding, other than the ultimate determination about whether the individual is disabled, about a medical issue made by an MC [medical consultant] or PC [psychological consultant] at a prior administrative level in the current claim." 82 Fed. Reg. 5844-01, 2017 WL 168819, at *5850.

is not required to "defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s) or prior administrative finding(s) including those from [the claimant's] medical sources." 20 C.F.R. § 416.920c(a).

a.   *Mental RFC: concentration, persistence or pace*

Plaintiff argues that ALJ Serafin did not properly account for her moderate limitations in concentration, persistence, and pace. In particular, plaintiff argues ALJ Serafin's RFC determination should have accounted for her inability to stay on task, sustain pace, or meet normal attendance and punctuality standards. Plaintiff also argues that the VE hypotheticals should have included "required repetition of directions, only visual demonstration directions, or other aspects related to moderate concentration limitations. . . ." (Doc. 8 at PAGEID 778).

The Commissioner argues in response that RFC determinations like that made by ALJ Serafin here have been found to adequately account for moderate limitations in concentration, persistence, and pace by this Court in other cases. The Commissioner also argues that ALJ Serafin's RFC determination related to those moderate limitations is based on substantial evidence.

i.   <u>ALJ Serafin's decision</u>

In her discussion of the "paragraph B" criteria, ALJ Serafin found plaintiff had moderate limitation in the area of concentrating, persisting or maintaining pace:

> With regard to concentrating, persisting or maintaining pace, [plaintiff] has a moderate limitation. The record does demonstrate significant limitations in this area of functioning, including through objective findings of[9]; they do not rise to the marked [or] extreme level. For example, [plaintiff] has alleged substantial difficulty focusing when in environments with significant sounds and noise (*see,*

---

For clarity, the Court will refer to the limitations opined by the state agency reviewing physicians and psychologists as "assessments" or "opinions."

[9] Text is missing in this sentence in the decision.

*e.g.*, Hr'g Test.); however, this is inconsistent with her reports, as also mentioned above, that she enjoys going the casino and of plans to see live band performances (*See* Ex. C5F, 26-27, 31; Ex. C6F, 23). Additionally, [plaintiff] has reported that she enjoys reading and listening to audiobooks, which require the ability to focus (*See, e.g.*, C6F, 20, 29, 41). Based on the foregoing, the undersigned finds that [plaintiff] has a moderate limitation in this area of functioning.

(Tr. 18).

For the mental RFC, ALJ Serafin determined plaintiff could "perform simple routine work tasks that are not at an assembly line or production pace and that do not involve any strict production quotas. . . . She can tolerate occasional changes in the work routine or setting." (Tr. 19). ALJ Serafin explained her determination in relevant part as follows:

Regarding other areas of mental functioning, examination[s] have also demonstrated normal rate of thoughts, normal memory, adequate/average attention span and concentration, adequate/average fund of knowledge, intact associations, normal abstract reasoning, logical thought processes, normal judgement concerning everyday activities, and normal thought content (*See, e.g.*, Ex. C5F, 4-5, 10, 14, 19; Ex. C11F, 5-6, 11, 30-31, 41-42, 60, 66). As to additional factors for consideration, [plaintiff] has reported engaging in leisure activities such as reading and listening to audiobooks, which requires the ability to focus, understand, and remember to successfully engage in (*See, e.g.*, C6F, 20, 29, 41).

[Plaintiff]'s allegations of debilitating mental health conditions are also inconsistent with her reported activities. For example, [plaintiff] testified that she is unable to tolerate nearly any social interactions, both with familiar and familiar (sic) people, and that she has difficulty with anxiety and concentration in environments with a lot of lights and sounds (*see* Hr'g Test.) However, as evidenced in her mental health treatment records, [plaintiff] has positively discussed enjoying going to the casino with her aunt, uncle, and sister on multiple occasions (*See* Ex. C5F, 26-27, 31). She has also discussed going on other types of outings when visiting her aunt and uncle (*See, e.g.*, Ex. C6F, 5, 23; Ex. C10F, 29). This includes an April 2022 report that plans for an upcoming visit included live band performances and going to Niagara Falls (*See* Ex. C6F, 23). At that time, [plaintiff] did not appear to express any apprehensiveness or concern or with these plans and later reported that she had enjoyed her visit (*see* Ex. C6F, 23, 29).

. . . .

13

[Plaintiff's] allegations of being overwhelmed by even small tasks, an inability to cope with stress, and difficulty with changes (*see, e.g.*, Hr'g Test.) are also not fully consistent with information contained in her treatment records. For example, [plaintiff] was able to start her own an online book club, which she operates herself (*see* Ex. C10F, 20, 29). Additionally, she has discussed planning for outings with her family, such as attending Christmas events with her sister, and has indicated a belief that these outings would not happen without her doing (*See* Ex. C6F, 41, 56; Ex. C10F, 5, 14). [Plaintiff] has also actively identified healthy coping strategies that she is able to utilize successfully, such as breathing exercises engaging in positive leisure activities like reading and gardening (*See, e.g.*, Ex. C6F, 29, 41, 46), and indicated that she has been able to abate panic attacks when she felt they were oncoming (*See* Ex. C5F, 18).

(Tr. 21-22).

## ii. Analysis

ALJ Serafin's mental RFC finding reasonably accommodates plaintiff's moderate limitation in concentration, persistence, and pace and is supported by substantial evidence. As noted above, when discussing plaintiff's concentration, persistence, and pace abilities, ALJ Serafin acknowledged plaintiff's limitations but pointed to records showing that plaintiff engaged in activities that require an ability to focus, understand, and remember, including going to the casino, reading, operating an online book club and participating in a library book club, gardening, planning family holiday gatherings, and planning travel and visits with her family (including live music performances, Niagara Falls, and other places). (*See* Tr. 18-19, referring to, *e.g.*, Tr. 440[10]-41, 445, 468, 471, 477,[11] 489,[12] 504; *see also* Tr. 22, referring to, *e.g.*, Tr. 614, 623, 629, 638. ALJ Serafin also reasonably considered mental health treatment records showing normal rate of thoughts, normal memory, adequate/average attention span and concentration,

---

[10] This record also documents plaintiff's report that her "[c]oncentration[ ]" was "okay." (*Id.*).

[11] This record also documents plaintiff's report that she was able to walk more, doing yardwork, and spending "a great deal of time cooking on . . . [a] grill."

[12] This record also documents plaintiff's report that she was "walking several miles with her dog. . . ."

adequate/average fund of knowledge, intact associations, normal abstract reasoning, logical

thought processes, normal judgment concerning everyday activities, and normal thought content.

(Tr. 21, referring to Tr. 418-19, 424, 428, 433, 654-55, 660, 679-80, 690-91, 709, and 715).  The

evidence cited by ALJ Serafin substantially supports her RFC decision.  Plaintiff offers no

medical evidence to explain why ALJ Serafin should have incorporated plaintiff's proposed,

specific limitations (e.g., having only visual demonstration directions) into her hypothetical

questioning of the VE.  *See Stanley v. Sec'y of Health & Hum. Servs.*, 39 F.3d 115, 118 (6th Cir.

1994) ("[T]he ALJ is not obliged to incorporate unsubstantiated complaints into his

hypotheticals. . . .").

Moreover, this Court has previously found that moderate limitations in concentration,

persistence and pace are accounted for by RFC determinations similar to this one.  *See, e.g.*,

*Jones v. Comm'r of Soc. Sec.*, No. 2:20-cv-2316, 2021 WL 2643116, at *8 (S.D. Ohio June 28,

2021) ("The ALJ accounted for [concentration, persistence, and pace] limitations opined by the

state agency psychologists by limiting Plaintiff to 'routine, simple tasks, work not requiring a

fast assembly quota pace as defined at hearing, . . . and work allowing for off task behavior of up

to 3% of the workday.'"); *Miller v. Comm'r of Soc. Sec.*, No. 1:16-cv-1121, 2018 WL 526553, at

*7 (S.D. Ohio Jan. 23, 2018) (report and recommendation), *adopted*, 2018 WL 1532527 (S.D.

Ohio Mar. 29, 2018) ("[T]he ALJ accounted for plaintiff's moderate limitations in concentration,

persistence and pace by including several specific restrictions in the RFC finding which limited

plaintiff to working in a static work environment with few changes in the work setting;

performing simple, routine and repetitive tasks, but not at a production rate pace or with strict

production quotas; and following simple instructions and making simple work-related

15

decisions."); *Henry v. Astrue*, No. 3:11-cv-416, 2012 WL 3811905, at *7 (S.D. Ohio Sept. 4, 2012) (report and recommendation), *adopted sub nom. Henry v. Comm'r of Soc. Sec.*, 2013 WL 1087690 (S.D. Ohio Mar. 14, 2013) ("Judge Lombardo allowed for Plaintiff's [moderate] limitations in concentration, persistence, and pace when she limited Plaintiff to unskilled and low stress work which does not include assembly line production quotas and which is not fast-paced.").

For the foregoing reasons, ALJ Serafin's mental RFC determination is based on substantial evidence.

### b.   *Physical RFC: medium work*

Plaintiff argues that the record consistently demonstrates back pain, knee pain, general pain, muscle stiffness, and clinical observations of gait asymmetry, positive FABER and Thomas tests bilaterally, and tenderness in the IT band patella—which are all inconsistent with the requirements of medium work.[13]  As to the particular RFC determination that she was capable of frequent fingering, handling, and feeling, plaintiff points to inconsistent evidence including EMG and NCV testing showing abnormal latency in the median nerves bilaterally/carpal tunnel syndrome and her reports of decreased sensation, locked fingers, stiffness, frequent dropping of items, and grip weakness.  Plaintiff also argues that ALJ Serafin was bound by ALJ Shaughnessy's prior finding that plaintiff was limited to less than the full range of light work with additional limitations of never climbing ladders, ropes, or scaffolds and to only occasional stooping, kneeling, crouching, and crawling.  She argues that new and material evidence not only

---

[13] "A full range of medium work requires standing or walking, off and on, for a total of approximately 6 hours in an 8-hour workday in order to meet the requirements of frequent lifting or carrying objects weighing up to 25 pounds. . . . . . . Use of the arms and hands is necessary to grasp, hold, and turn objects. . . ."  SSR 83-10, 1983 WL 31251, at *6 (Jan. 1, 1983).

fails to show improvement but shows worsening symptoms and further diagnoses and impairments.

The Commissioner argues in response that ALJ Serafin considered ALJ Shaughnessy's prior RFC determination but declined to adopt it due to intervening "significant changes in the musculoskeletal listings . . . and related policy matters" and the fact that, on a fresh review, she did not find fibromyalgia to be a medically determinable impairment. (Tr. 20). The Commissioner argues ALJ Serafin explained that plaintiff's reported symptoms were "inconsistent with imaging reports, electrodiagnostic evidence, physical and mental examination findings, . . . her overall conservative treatment history, as well as her reported activities." (Tr. 21). The Commissioner compiles a long list of normal physical examination findings related to exertional, postural, and manipulative limitations (*see* Doc. 9 at PAGEID 797-99) and highlights ALJ Serafin's discussion of plaintiff's various activities of daily living, all of which support ALJ Serafin's finding that plaintiff was capable of medium work. The Commissioner also argues that ALJ Serafin properly relied on the state agency physicians' opinions and explained elements of those opinions she did not find persuasive. In particular, ALJ Serafin found plaintiff was not "unlimited" in feeling due to mild carpal tunnel syndrome and disagreed with a limitation to "frequent" pushing and pulling of bilateral hand controls due to sparse evidence of issues with grip strength, upper extremity range of motion, or upper extremity strength.

i.  ALJ Serafin's decision

With respect to physical impairments, ALJ Serafin determined:

[Plaintiff] has the residual functional capacity to perform medium work as defined in 20 CFR 416.967(c) except: She can frequently climb ramps and stairs and can occasionally climb ladders, ropes, and scaffolds. She has no limitations on

balancing and can frequently stoop, kneel, crouch and crawl. She can frequently perform fingering, handling, and feeling with the bilateral upper extremities.

(Tr. 19). When discussing her overall RFC determination, ALJ Serafin noted plaintiff's allegedly debilitating impairments were "inconsistent with imaging reports, electrodiagnostic evidence, physical . . . examination findings, and her overall conservative treatment history, as well as her reported activities." (Tr. 21).[14]

ALJ Serafin discussed medical records relating to plaintiff's physical impairments, including plaintiff's 2022 rheumatology records, 2022 primary care records, 2021-2022 Marietta Memorial Hospital records, 2021-23 chiropractor records, 2021-23 occupational therapy records, and 2022-23 behavioral health records. (*See* Tr. 23). ALJ Serafin noted that plaintiff's rheumatology records did not reflect ongoing care, but she did not otherwise specifically comment on the contents of those records. (*See id.*). ALJ Serafin then concluded that plaintiff's symptom allegations "were not fully supported by the objective evidence and her overall conservative treatment history" or the "record as analyzed above." (Tr. 24).

ALJ Serafin also explained that she found the opinions of the state agency physicians, who found plaintiff was capable of a limited range of medium work, "generally, but not fully persuasive." (*Id.*). While the state agency physicians opined that plaintiff was "unlimited" in her ability to feel, ALJ Serafin determined plaintiff was limited to "frequent" feeling to account for plaintiff's mild carpal tunnel syndrome. (Tr. 25). ALJ Serafin also declined to adopt the state agency physicians' limitation to "frequent" pushing and pulling of hand controls with the upper extremities because there was no objective demonstration of "significant issues with grip

---

[14] Earlier in her decision, ALJ Serafin highlighted records that detail plaintiff's reports of other physical activity inconsistent with more severe physical limitations. *See supra* nn.10-11.

strength or with upper extremity range of motion, and only limited and sparse evidence of mildly decreased upper extremity strength at times. . . ." (Tr. 25). ALJ Serafin otherwise adopted the stage agency opinions for medium work. ALJ Serafin highlighted the fact that the state agency physicians noted no evidence of gait dysfunction, records showing normal lower extremity strength, and plaintiff's reports of gardening. (Tr. 25, referring to Tr. 113, 125).

ii. <u>Analysis</u>

Considering ALJ Serafin's decision as a whole, the Court concludes that ALJ Serafin reasonably declined to adopt the prior ALJ's physical RFC determination based on the record before her. The Court beings with plaintiff's argument that the record reflects reported symptoms and clinical observations inconsistent with the requirements of medium work. Plaintiff relies on her testimony and three February 2023 occupational therapy records to support this argument. (*See* Tr. 60 (testimony referring to muscle stiffness, hand weakness, back and knee issues); Tr. 568, 571,[15] and 574 ("tenderness to ITB (right), superior, lateral, and distal patella borders, distal quad and distal patellar tendon[;]" "hypoe[s]thesia response to cursory light touch . . . decreased sensation thumb, index, middle finders[;]" "slight asymmetry" in gait; and positive FABER, Thomas, De Quervain's, and Phalen's tests bilaterally)).[16] ALJ Serafin expressly considered this evidence (*see* Tr. 22-23 (referring to plaintiff's testimony and her "one month course for IT band syndrome and CTS from January to February 2023")) but determined

---

[15] Plaintiff cites Tr. 572, but the relevant record appears to be located at Tr. 571.
[16] Plaintiff points to other medical records elsewhere in her statement of errors. (Doc. 8 at PAGEID 776-777, referring to Tr. 351-52, 356, 416, 420, 498, 504, 601, 635, 641)). These records mostly list her medical diagnoses and medications without any elaboration that might bear on her physical limitations (*see* Tr. 351-52, 356, 416, 498). Other records do not appear to relate to her physical impairments at all, contain unremarkable findings, or contain information inconsistent with greater physical limitations (*see* Tr. 504 (counseling record with no mention of physical impairments), Tr. 601 ("decreased hamstring flexibility"), Tr. 635 (counseling record in which plaintiff reported doing "much landscaping work" and wanting to work on "flower, vegetable gardens, and landscaping"), Tr. 641 (counseling record in which plaintiff reported "landscaping and gardening work" and "walking her dog some")).

19

that it did not merit significant weight. In doing so, ALJ Serafin relied on the opinions of the state agency physicians, who opined that plaintiff was capable of medium work. (Tr. 24-25, referring to Tr. 112-13, 124-25). ALJ Serafin noted their opinions were consistent with "unremarkable imaging findings, generally mildly abnormal to normal physical examinations findings, . . . the claimant's conservative treatment[17] . . . , as well as her reported activities. . . ." (Tr. 24). ALJ Serafin also specifically noted the state agency physicians' references to records showing normal gait, normal strength, and physical activities such as gardening all supported their opinions that plaintiff was capable of medium-work. (Tr. 25, referring to Tr. 112, 124). Thus, plaintiff's first argument does not demonstrate that ALJ Serafin's medium-work determination is not based on substantial evidence.

Plaintiff's next argument concerns her upper-extremity limitations. She relies on her testimony, her carpal tunnel syndrome diagnosis (and related testing), and a single occupational therapy record reflecting hypoesthesia and decreased sensation to argue that ALJ Serafin erred by discounting the state agency physicians' opined limitations to "frequent" pushing/pulling with hand controls (Tr. 113, 125). (*See* Doc. 8 at PAGEID 776, referring to Tr. 60, 62, 400-01, 568). As discussed above, however, ALJ Serafin expressly discussed plaintiff's testimony and this occupational therapy record; and she later noted plaintiff's "unremarkable imaging findings" when discussing the state agency physicians' opinions. (Tr. 24). ALJ Serafin concluded that plaintiff's reported symptoms were not consistent with the medical evidence of record—a finding plaintiff does not specifically challenge. Otherwise, ALJ Serafin reasonably accounted

---

[17] ALJ Serafin noted that plaintiff underwent only "one month course[s]" of physical therapy for her patellofemoral disorder, and her IT band and carpal tunnel syndrome, respectively, and that there was no evidence of "ongoing [rheumatology] care." (Tr. 23).

for plaintiff's documented carpal tunnel syndrome by expanding the state agency physicians' manipulative limitation to include "frequent" as opposed to "unlimited" feeling. Plaintiff fails to highlight medical evidence demonstrating that her carpal tunnel diagnosis or reported, related symptoms require greater limitations than those determined by ALJ Serafin. ALJ Serafin's determination with respect to plaintiff's manipulative limitations is therefore based on substantial evidence.

Finally, plaintiff argues that ALJ Serafin was bound by ALJ Shaughnessy's prior physical RFC determination, as new and material evidence not only fails to show improvement but shows worsening symptoms and further diagnoses and impairments. ALJ Shaughnessy determined that plaintiff had the medically determinable physical impairments of fibromyalgia and obesity. (Tr. 89). Based on that, ALJ Shaughnessy limited plaintiff to less than the full range of light work with additional limitations. (Tr. 93). Here, ALJ Serafin declined to find fibromyalgia a medically determinable physical impairment but did find plaintiff has obesity and the additional medically determinable physical impairments of iliotibial band syndrome, trochanteric bursitis, patellofemoral stress syndrome, bilateral carpal tunnel syndrome, and hypothyroidism. (Tr. 13).

As discussed above, ALJ Serafin was not bound to accept ALJ Shaughnessy's prior determination that plaintiff had the RFC to perform less than the full range of light work with additional restrictions. *See Earley*, 893 F.3d at 931. ALJ Serafin reasonably explained why she did not find that fibromyalgia was a medically determinable impairment based on a "fresh look"/review of plaintiff's application—effectively "new evidence" for purposes of not deferring to ALJ Shaughnessy's prior physical RFC determination. *Id.* In addition, the state agency

21

physicians were the only doctors to offer opinions on plaintiff's physical limitations. In forming

their opinions, they considered obesity, carpal tunnel syndrome, *and* fibromyalgia as severe

medically determinable impairments and *nevertheless* found plaintiff capable of medium work

with postural limitations. (Tr. 110, 122). The Court finds that this, too, is substantial new

evidence[18] warranting a departure from ALJ Shaughnessy's prior physical RFC determination.

For the foregoing reasons, plaintiff's assignment of error related to ALJ Serafin's RFC

determination is **OVERRULED**.

In any event, even if ALJ Serafin erred in finding an RFC for a limited range of medium

work, this would be harmless error. Plaintiff argues ALJ Serafin's "conclusion . . . diverges

from the prior RFC determination issued by ALJ [Shaughnessy], who found [plaintiff] capable of

less than the full range of light work, with restrictions including never climbing

ladders/ropes/scaffolds, and only occasionally stooping, kneeling, crouching, and crawling."

(Doc. 8 at PAGEID 776, referring to Tr. 93). ALJ Serafin's second hypothetical question to the

VE, however, essentially recited ALJ Shaughnessy's RFC finding, and the VE identified a

significant number of light jobs in the national economy. (Tr. 70). (*See also* Tr. 26 ("[A] further

restriction to work within the light exertional range would have no material impact on the

outcome of this decision.")). Thus, there would be no basis to remand this matter even if ALJ

Serafin's finding that plaintiff had an RFC for medium work was not substantially supported.

### III. Conclusion

Based on the foregoing, plaintiff's Statement of Errors (Doc. 8) is **OVERRULED,** the

---

[18] The state agency reviewing physician in the prior case had "listed physical diagnoses including fibromyalgia and obesity" and found plaintiff was capable of lifting and carrying 20 pounds occasionally and 10 pounds frequently. (Tr. 94). *See* 20 C.F.R. § 416.967(b) (defining light work as "lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds").

Commissioner's non-disability finding is **AFFIRMED**.  **IT IS THEREFORE ORDERED** that judgment be entered in favor of the Commissioner and this case is closed on the docket of the Court.

Date:    11/12/2025

Karen L. Litkovitz
United States Magistrate Judge